**UNITED STATES CAST IRON PIPE & FOUNDRY CO. v. FULLER. (6 Div. 82.)**

(Supreme Court of Alabama.    Oct. 16, 1924. Rehearing Denied Nov. 27, 1924.)

**I. Master and servant ⬥361—Count held not demurrable as showing plaintiff to have been defendant's employee, and within Compensation Act.**

Count of complaint alleging that plaintiff was working in defendant's clay pit, not as employee of defendant, but by his invitation and consent, *held* not demurrable as showing plaintiff to have been defendant's employee, whose exclusive recourse was under Workmen's Compensation Act (Laws 1919, p. 206).

**2. Master and servant ⬥316(1)—One contracting to furnish clay held independent contractor.**

One contracting to furnish clay, for which he was paid by load, to mud mill of foundry company, which saw that clay delivered was of right sort, required, in general way, that enough be furnished to keep mill at work, and employed engineer, who occasionally looked over digging of clay, *held* independent contractor.

**3. Negligence ⬥52—Employee of independent contractor held entitled to warning of danger known to owner of premises.**

Laborer injured by cave-in while working in clay pit for independent contractor *held* not

bare licensee but either invitee 'or licensee serving interest of pit owner, which owed him duty to warn him of any danger, of which it knew or should have known, and of which he was unaware.

**4. Negligence ⬥52—Duty to warn invitee or licensee depends on circumstances.**

Duty of owner of premises to warn invitee or licensee serving owner's interest varies according to character of danger, nature of premises, and circumstances under which they are to be visited.

**5. Mines and minerals ⬥118—Mine owner's duty to keep mine reasonably safe extends only to conditions existing when turned over to contractor.**

Duty of mine owner to employee of independent contractor, working therein to keep it in reasonably safe condition, extends only to conditions existing when turned over to contractor, not those arising from changes caused by progress of work contractor undertook to do.

**6. Negligence ⬥121(1)—Burden on contractor's employee to show owner's negligence in inviting him.**

Burden was on independent contractor's employee, suing owner of clay pit for injuries from cave-in, to show defendant chargeable with negligence in inviting plaintiff therein.

**7. Negligence ⬥32(1)—Owner of premises held not negligent in inviting contractor's employee into dangerous place.**

Owner of clay pit, in which laborer, who had worked for independent contractor for about three months, was injured by cave-in, danger of which was indicated by crack in top soil, observed, if at all, on day before accident, *held* not negligent in inviting contractor's employee into dangerous place.

**8. Negligence ⬥50—Owner of clay pit held not negligent in not re-examining dangerous part before return of contractor's employee thereto.**

Owner of clay pit, to dangerous part of which independent contractor's employee returned after working in another part for several days, *held* not negligent in not re-examining premises and warning employee of danger of cave-in.

**9. Negligence ⬥52—Duty of owner of premises to warn contractor's employees stated.**

To obligate owner of premises to warn contractor's employees of danger it must appear that owner was bound to do so by agreement with contractor or assumed obligation with knowledge of contractor or his employees, and that they relied on his doing so.

**10. Negligence ⬥50—Finding owner undertook to keep operation of clay pit safe or that contractor's employés relied thereon not warranted.**

That owner's engineer looked over operation of clay pit by contractor *held* insufficient to warrant finding that owner undertook to keep operation of pit safe for contractor's employés, or that they relied, or had reason to rely, on

such undertaking so as to charge owner with negligence because engineer observed dangerous condition.

·Appeal from Circuit Court, Jefferson County, Bessemer Division; J. C. B. Gwin, Judge.

Action for damages for personal injury by Uriah Fuller against the United States Cast Iron Pipe & Foundry Company. ·Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Brenton K. Fisk, of Birmingham, for appellant.

Where one represents the will of the employer only as to result of his work, and not as to the means of its accomplishment, he is an independent contractor. Caldwell v. A. B. & A., 161 Ala. 395, 49 So. 674; Powell v. Const. Co., 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; Scoggins v. A. & G. P. C. Co., 179 Ala. 213, 60 So. 175; McCarthy v. Parish, 71 Me. 318, 36 Am. Rep. 320; 2 Words and Phrases, 1534; 1 Shearman & Redfield on Negli. (5th Ed.) 164. There is a difference between superintendence over the place of work and superintendence over the manner of doing the work. Sloss Co. v. Edwards, 195 Ala. 375, 70 So. 285; Freeman v. Worthington, 206 Ala. 76, 89 So. 389. Where the owner turns over the mine to an independent contractor in good condition, though he retain some degree of general control, owes no duty to watch over it for temporarily dangerous conditions. Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 66 So. 609; Hubbard v. Coffin & Leake, 191 Ala. 494, 67 So. 697; Warrior-Pratt Co. v. Shereda, 183 Ala. 118, 62 So. 721; Woodward Iron Co. v. Brown, 167 Ala. 317, 52 So. 829. If plaintiff was employed by defendant, the Workmen's Compensation Act applies, Act 1919, § 10½; Steagall v. Sloss Co., 205 Ala. 100, 87 So. 787.

Perry, Mims & Green, of Bessemer, and Black, Harris & Foster, of Birmingham, for appellee.

Plaintiff was an employer of an independent contractor, and was in the mine by invitation. T. C. I. Co. v. Burgess, 158 Ala. 519, 47 So. 1029; Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 66 So. 609; Harris v. McNamara, 97 Ala. 181, 12 So. 103; Lookout Mt. Ir. Co. v. Lea, 144 Ala. 169, 39 So. 1017; Republic I. & S. Co. v. Fuller, 6 Ala. App. 448, 60 So. 475. The defendant, inviting another upon its premises for his own interest, assumed the duty of warning him of any danger of which he knows or ought to know. Sloss Co. v. Tilson, 141 Ala. 152, 37 So. 427; Samuelson v. C. I. Min. Co., 49 Mich. 170, 13 N. W. 499, 43 Am. Rep. 456; Montevallo Min. Co. v. Little, 208 Ala. 131, 93 So. 873; Bennett v. Railroad, 102 U. S. 577, 26 L. Ed. 235; 20 R. C. L. 56; Connors-Weyman v. Kilgore,

supra; Powers v. Harlow, 53 Mich. 507, 19 N. W. 259, 51 Am. Rep. 154; Stevens v. United G. & E. Co., 73 N. H. 159, 60 A. 848, 70 L. R. A. 119: O'Brien v. Tatum, 84 Ala. 186, 4 So. 158.

SAYRE, J. Appellant had a contract with one Wilkinson by which the latter was to mine and deliver to appellant clay for appellant's mud mill. The property from which the clay was taken was the property of appellant. The clay lay under a top soil 6 to 18 inches deep. The depth of the clay, which lay between the top soil and an underlying stratum of rock, is stated as being 6 to 9 feet. Plaintiff, appellee, was at work for Wilkinson, loading clay into a wagon, when the adjacent bank caved in upon him, causing the injuries on account of which he brought this action.

[1] The burden of defendant's demurrer to the third count of the complaint—all others having been eliminated—was that it showed plaintiff to have been an employee of defendant, and so that plaintiff's exclusive recourse was under the Workmen's Compensation Act (Laws 1919, p. 206). This demurrer was overruled, and properly so. The language of the count is:

"Plaintiff further alleges that * * * he was engaged in work in the defendant's said clay pit, not as an employee of defendant, but by invitation of the defendant, and with the defendant's consent, and while so working," etc.

This language denies the demurrer.

[2] The evidence showed without dispute or contrary inference that plaintiff was, at the time of the accident which resulted in his injury, employed by Wilkinson as a day laborer. Wilkinson's contract was to furnish clay to defendant's mud mill, for which he was paid by the load. Defendant saw to it that the clay delivered to its mud mill was of the right sort; that is, contained not too much dirt, not too much of the top soil. Defendant had in its employment a safety engineer who overlooked all the operations conducted by defendant in the manufacture of pipe, and this engineer occasionally looked over the digging of clay by Wilkinson. Defendant required, in a general way, that Wilkinson furnish enough clay to keep its mill at work. Otherwise than as stated defendant had nothing to do with Wilkinson's operations in the pit. These facts, very clearly in our judgment, establish the conclusion that Wilkinson was an independent contractor. Connors-Weyman Steel Co. v. Kilgore, 189 Ala. 643, 66 So. 609; Hubbard v. Coffin & Leak, 191 Ala. 494, 67 So. 697; Sloss-Sheffield Co. v. Edwards, 195 Ala. 376, 70 So. 285, and cases cited.

[3] It is alleged in the complaint that—

"The said clay pit was dangerous and liable to cave upon a person employed as plaintiff was,

and which danger was not known to the plaintiff, but which danger and the ignorance thereof of plaintiff was known to defendant, or by the exercise of reasonable diligence should have been known to the defendant, and the defendant negligently failed to warn the plaintiff of such danger, and as a proximate consequence of such negligence on the part of defendant plaintiff was in a place dangerous to such cave, or may be liable to occur, and while in such position such cave-in did occur, casting the earth and clay upon plaintiff, and the injuries alleged, * * * which was a proximate consequence of the defendant's negligence in failing to warn plaintiff of such danger."

Plaintiff had been in the employment of Wilkinson for some time. The accident happened late in the afternoon of Tuesday. Work at the particular place where plaintiff was hurt had been suspended on the preceding Thursday. When plaintiff was sent back to work at that place, under instructions by Wilkinson he worked, not on the face of the surrounding bank of clay, but on the bottom of the pit. His work on that occasion, it seems, had nothing to do with the caving in of the bank. At that point the pit was 7 or 8 feet deep, and the clay had been dug back under the surface about 18 inches, leaving an overhang of that much. We quote from appellee's brief:

"The testimony all showed that this was not in itself an apparently dangerous condition. It would appear ordinarily strong enough to stand without falling. But it appeared upon this occasion and at this place that there was on the surface a crack about 2 inches wide and several inches deep, about 18 inches from the edge of the soil overhanging this pit. The crack was not observable by one in the pit. It was shown that the defendant's safety engineer was at that point that very morning, looking around and talking and attending to his duties of protecting the people who were upon the premises of the defendant. He testified that there was no such crack there. He further testified that, if there had been such a crack there, it would have been dangerous. He further testified that, if he had seen any such crack there, he would have notified the employees in the pit."

Plaintiff testified that he did not know of the crack; that he was ignorant of the danger; and that he was not warned against it. In these circumstances the bank of clay caved in, falling on plaintiff.

Whether plaintiff be considered as an invitee of defendant (Tenn. Co. v. Burgess, 158 Ala. 525, 47 So. 1029) or a licensee serving in part the interest of defendant (Sloss-Sheffield Co. v. Edwards, 195 Ala. 376, 70 So. 285), —clearly he was not a bare licensee —defendant's duty to him has been thus stated by the eminent Judge Cooley in Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154:

"A person giving such a license, especially when he gives it wholly or in part for his own interest as was the case here, and thereby invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of, or ought to know of, and of which they are not aware."

This statement of duty in cases like this has been approved by this court in Sloss Iron & Steel Co. v. Tilson, 141 Ala. 161, 37 So. 427, and Republic Iron & Steel Co. v. Luster, 192 Ala. 501, 68 So. 358. This principle had been previously examined at length by Judge Cooley in Samuelson v. Cleveland Iron Mining Co., 49 Mich. 164, 13 N. W. 499, 43 Am. Rep. 456, where authorities were cited and the principle declared to be very just and very familiar. Frequently we encounter the formula:

"The owner or occupant of premises, who induces others to come upon it by invitation, express or implied, owes them the duty of using reasonable or ordinary care to keep the premises in a safe and suitable condition so that they will not be unnecessarily or unreasonably exposed to danger." 29 Cyc. 453; 21 Am. & Eng. Enc. Law (2 Ed.) 471, cited in Tenn. Co. v. Burgess, supra.

This court in the Connors-Weyman Case, supra, as the result of cases consulted and cited, has said—

"that a mine owner, who, for some benefit to himself, procures the working of his mine, even by an independent contractor, and therefore impliedly invites such contractor and his employees to enter and use such mining premises, is liable to them for personal injuries resulting from any condition of the premises which is inherently dangerous, if the owner had knowledge or notice of such condition and the contractor or his employees had not."

[4] But, as this court observed in Tenn. Co. v. Burgess, supra:

"It is obvious that the duty must vary according to the character of the danger, the nature of the premises, and the circumstances under which they are to be visited."

[5-7] In that case it was noted that the evidence went to show that it was the duty of the mine owner to inspect the roof of mine as the work of mining progressed—upon what consideration does not appear. But in the later case of Sloss-Sheffield Co. v. Edwards, supra, a case in which the plaintiff, injured in the progress of mining operations, was employed by an independent contractor, as here, this court held—and very correctly, as we think—that the duty which the owner owed to the employees of the contractor to keep its mine in a reasonably safe condition extended only to conditions existing when the mine was turned over to the contractor for mining, and not to conditions arising out of changes caused by the progress of the work the contractor undertook to do. Other cases to the same effect were there cited. Here, as was the case in Samuelson v. Cleveland Iron Mining Co., supra, we search the

record in vain for any evidence that defendant is chargeable with negligence in inviting miners into a dangerous mine. Appellee's brief assumes that the burden of proof as to this was on defendant, but there can be no doubt that in this, as in all material respects, the burden rested upon plaintiff to make out his case. The accident causing the injury to plaintiff happened in the latter part of November, 1922. Defendant had acquired the property about a year before. The contract with Wilkinson was made in 1921. Plaintiff had worked for Wilkinson about three months. The crack in the top soil, which indicated danger, was observed, if at all, on the day before the accident. Evidently defendant had not in the beginning invited Wilkinson's employees into a dangerous place, and defendant was due the affirmative charge requested.

[8] We find in appellee's brief the suggestion by way of tentative alternative, that the return of Wilkinson's employees on Tuesday to the place of the accident might have been found by the jury sufficient to bring plaintiff's case within the rule which requires the owner to warn invitees when coming upon his premises of dangers known to him, or which he ought to know, of which they are unaware. This suggestion does not seem to be very seriously urged, but, in any event, we are unable to see merit in it. In the interim between Thursday and Tuesday Wilkinson's employees had by him been moved to another part of the pit. On Tuesday they were sent back to the place of the accident because at that place they could more expeditiously scrape up the clay which defendant was insistently demanding for its mud mill. There was no change of control or possession. Work had merely been shifted from one part of the pit to another. To require a new examination of the premises by the owner on the occasion of every such change would in effect place upon him the burden of constant supervision, would break down the lawful arrangement into which he had entered with the independent contractor, would attach to such arrangement duties and liabilities which have not heretofore been recognized by the courts.

[9, 10] Appellee's final effort to avoid the conclusion stated is made to rest upon his contention that he does not proceed as for negligence in defendant's failure to provide a reasonably safe place, but claims compensation because defendant's safety engineer, having observed the crack in the top soil which portended danger, and, knowing plaintiff's ignorance of such danger, failed to warn plaintiff. The effort is to fasten upon defendant a duty in addition to that implied by law as between the owner defendant and the employees of the independent contractor, and, to bring about that status of obligation and liability, as this court said in the Connors-Weyman Case, supra, "it must be made to appear, either that he [defendant] was bound to do so by agreement with the contractor, or else that he had in fact assumed to do so with the knowledge of the contractor or his employees, and that they had relied upon his doing so." Neither the pleading nor the proof make a case under the rule just quoted. The pleading cannot be so construed because it alleges no such facts, and defendant attempted to set up this lack of averment, but was unable to make its objection available for the reason that plaintiff had astutely avoided an allegation that plaintiff's employer was an independent contractor. As for the proof we can find, as the court in the Connors-Weyman Case could find, no such retention of charge or control, nor was there any such arrangement between defendant and its contractor as gave the employees of the latter any assurance that the former would protect them against the negligence of the contractor or his employees. As for the rest, we may paraphrase the language employed by the court in the Connors-Weyman Case—a case much stronger for the complaining employee than this—by saying that evidence which went to show that, in his general oversight of defendant's plant and operation, defendant's safety engineer looked over the mining operations carried on by Wilkinson, and, according to the tendency of plaintiff's testimony, observed the dangerous condition of the bank of clay. These facts, though found by the jury, are wholly insufficient to warrant a finding that defendant did in fact undertake to make and keep the operation of the clay pit, or any part of it, safe for Wilkinson's employees, or that they relied, or had any reason to rely, upon such an undertaking. As in that case again the most the evidence can be said to show is a humanitarian, but purely gratuitous, interest in their safety, and a willingness to conserve it against such abuses as their engineer might chance to observe.

Our opinion is that the judgment should be reversed and the cause remanded for a judgment in accord with what we have said.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.